**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**

**v.**                                             **CAUSE NO. 1:02-CR-1144-VEC**

**BERNARD J. EBBERS**

## MOTION FOR REDUCTION IN SENTENCE

Bernard J. Ebbers, by and through undersigned counsel, hereby files his Motion for Reduction in Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) and related authority.  In support of this Motion, Ebbers shows the following:

### I.    INTRODUCTION

1.    Following a jury trial, Mr. Ebbers was found guilty of 9 counts involving fraud, false statements, or false filings related to securities associated with MCI/WorldCom, a telecommunications company of which Ebbers was CEO, President, and a Director.  The offenses were non-violent in nature.  The above convictions were Ebbers' first convictions for any felony offense.

2.    Mr. Ebbers is now 78 years old.  He suffers from a variety of serious medical conditions and overall deterioration of health, as detailed below.  Because of his medical condition, the former United States District Court Judge who sentenced Mr. Ebbers, Hon. Barbara Jones, supports his release from prison.  Judge Jones states: "A reduction in sentence now, however, after he has served almost 14 years of his sentence and developed serious medical issues, would not diminish the message that I sought to convey in 2005. It would show compassion. And, to state the obvious, it would not jeopardize public safety.

In short, I believe that given his serious health problems, Mr. Ebbers has been punished enough." Exhibit "1," Letter from Judge Jones to Judge McMahon dated 09/03/2019.[1]

3.      With the enactment of Formerly Incarcerated Reenter Society Transformed Safely Transitioning Every Person Act or "First Step Act," 2018, Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), new avenues are available to federal prisoners to seek a reduction in sentence or compassionate release due to age, health, and other factors.  The changes to the compassionate release laws under the First Step Act were designed to increase "the use and transparency of compassionate release".

4.      For the reasons set forth herein, Mr. Ebbers respectfully requests that this Court enter an Order reducing his term of imprisonment to time-served and for immediate release under the least restrictive conditions.

## II.      PROCEDURAL HISTORY

5.      Mr. Ebbers was charged in this cause by a Superseding Indictment that was unsealed on March 24, 2004.

6.      Following a jury trial, Mr. Ebbers was convicted of 9 counts in the superseding indictment.  Count 1 was Conspiracy to Commit Securities Fraud, Make False Statements and Falsifying Corporate Financial Records pursuant to 18 U.S.C. § 371; Count

---

[1] Since Judge Jones did not know to which District Judge the matter would be reassigned, she addressed her letter to the Chief Judge of the Southern District of New York.

2 was Securities Fraud pursuant to 15 U.S.C. §§ 78j(b) & 78ff; Counts 3 through 9 were False Filing with the Securities and Exchange Commission pursuant to 78m(a) & 78ff. United States District Court Judge Barbara Jones presided over Mr. Ebbers' trial.

7.     On July 13, 2005, Judge Jones sentenced Mr. Ebbers to a total term of imprisonment of 25 years.

8.     Mr. Ebbers was allowed to delay reporting to federal prison while his direct appeal was pending.

9.     Mr. Ebbers appealed his conviction and sentence to the United States Court of Appeals for the Second Circuit.  The conviction was affirmed.  *United States v. Ebbers*, 458 F.3d 110 (2d Cir. 2006).  The United States Supreme Court denied Ebbers' petition for certiorari review.  *Ebbers v. United States*, 127 S.Ct. 1483, 549 U.S. 1274 (2007).

10.     Mr. Ebbers reported to federal prison on September 26, 2006.  Mr. Ebbers began serving his sentence at FCI Oakdale in Louisiana, where he remained until 2017, when he was transferred for health reasons to FMC Fort Worth, an administrative security federal medical center.

11.     As of the date of this filing, Mr. Ebbers has served 12 years, 11 months, and 10 days of his sentence.  He has completed over 50% of his sentence.

3

12.     According to the Bureau of Prisons ("BOP"), Mr. Ebbers' tentative release date is July 4, 2028.[2]

13.     Mr. Ebbers is currently incarcerated at FMC Fort Worth, an administrative security federal medical center.

14.     On July 16, 2019, one of Mr. Ebbers' daughters, Joy Ebbers Bourne, submitted a Compassionate Release Request to the Warden of FMC Fort Worth. Exhibit "2," Compassionate Release Request.[3]  The request (Exhibit "2") and materials submitted in support of the request (Exhibit "3")[4] are incorporated herein by reference as if reproduced in words and figures.  The request was received at FMC Forth Worth on July 17, 2019.  Exhibit "4," Federal Express Delivery Confirmation.

15.     Upon information and belief, the Warden of FMC Fort Worth recommended that the request for compassionate release be approved by the BOP.  However, Assistant Director/General Counsel of BOP, Ken Hyle, denied the request on August 12, 2019. Exhibit "5," Memorandum from Hyle to Warden, FMC Ft. Worth.

---

[2] Another reform under the First Step Act was a more favorable calculation of "good time credits" for inmates.  It is not believed that the anticipated release date for Mr. Ebbers as shown on the BOP's website has yet taken those into account.  But even accounting for that reduction, Mr. Ebbers will still have a significant amount of prison time yet to serve.

[3] Under BOP Policy Statement 5050.50 § 571.61, requests for compassionate release can be made by another person on behalf of an inmate.  Such requests are processed "in the same manner as an inmate's request."  Mr. Ebbers' daughter submitted the request on his behalf because Mr. Ebbers was unable to submit it himself due to being legally blind.

[4] To save space, some of the letters of support included with the request have been removed.  However, these can be provided to the Court if desire.

16.     Mr. Ebbers now seeks a reduction in sentence and release from this Court pursuant to 18 U.S.C. § 3582(c)(1)(A).

### III.   APPLICABLE LAW

17.     This Court is empowered by 18 U.S.C. § 3582(c)(1)(A) to reduce Mr. Ebbers' sentence.  That statute sets forth the following requirements for the court to grant a reduction in sentence when requested directly by a defendant: (1) "exhaustion of administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility"; (2) consideration of "the factors set forth in section 3353(a) to the extent that they are applicable"; (3) a finding that "extraordinary and compelling reasons warrant such a reduction"; and (4) a finding that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission".

18.     18 U.S.C. § 3582(c)(1)(A) was amended as part of the First Step Act, with the express purpose of expanding compassionate release.  These changes to the law occurred after the system which permitted BOP to act as the only gatekeeper to compassionate release. *See, e.g.*, Bryant S. Green, Comment, *As the Pendulum Swings: The Reformation of Compassionate Release to Accommodate Changing Perceptions of Corrections*, 46 U. Tol. L. Rev. 123, 136-39 (2014); Casey N. Ferri, *A Stuck Safety Valve: The Inadequacy of Compassionate Release for Elderly Inmates*, 43 Stetson L. Rev. 197, 219-25 (2013); Human Rights Watch & Families Against Mandatory

Minimums, *The Answer Is No: Too Little Compassionate Release in US Federal Prisons* (2012), available at the following URL: https://www.hrw.org/report/2012/11/30/answer-no/too-little-compassionate-release-us-federal-prisons (visited Sept. 3, 2019).

19.     In fact, the Department of Justice's own Inspector General found, in 2013, that "the existing BOP compassionate release program is poorly managed and that its inconsistent and ad hoc implementation has likely resulted in potentially eligible inmates not being considered for release[, and] . . . terminally ill inmates dying before their requests for compassionate release were decided." U.S. Dep't of Justice, Office of the Inspector General, Evaluation and Inspections Division, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013) at p. 53.[5]

20.     It was dissatisfaction with the BOP's crabbed interpretation and administration of its compassionate release program that led to the reforms contained in the First Step Act. *See, e.g.,* Erica Zunkel, *18 U.S.C. § 3553(a)'s Undervalued Sentencing Command: Providing a Federal Criminal Defendant with Rehabilitation, Training, and Treatment in "the Most Effective Manner*," 9 Notre Dame Journal of International Law 49, 61 (2019) ("The First Step Act aims to increase 'the use and transparency of compassionate release' by broadening eligibility and removing sole discretion for determining who is eligible for compassionate release from the BOP.") (footnote omitted).

---

[5] Available at the following URL: https://oig.justice.gov/reports/2013/e1306.pdf (visited Sept. 3, 2019).

21.     As noted above, one of the factors that 18 U.S.C. § 3582(c)(1)(A) requires is that the reduction in sentence be "consistent with applicable policy statements issued by the Sentencing Commission".   The applicable Policy Statement of the Sentencing Commission is U.S.S.G. § 1B1.13. Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A).

22.     The Sentencing Commission's Policy Statement provides that, when reviewing a request for reduction, consideration should be made as to whether the Defendant poses a danger to the safety of any other person or to the community, pursuant to 18 U.S.C. § 3142(g).   The other considerations are those specified in 18 U.S.C. § 3582(c)(1)(A).

23.     Application Note 1 of § 1B1.13 sets forth the Sentencing Commission's recommendations for what constitutes "extraordinary and compelling reasons" for reduction of sentence under Section 3582(c)(1)(A).   The Commission has been expressly empowered by Congress to do so by 28 U.S.C. § 994(t).   The Commission finds that extraordinary and compelling reasons for reduction exist under any of four broad sets of circumstances: (A) Medical Condition of the Defendant; (B) Age of the Defendant; (C) Family Circumstances; and (D) Reasons "other than, or in combination with" the previous three circumstances.

24.     Under Application Note 1(A), Medical Condition of the Defendant, extraordinary and compelling reasons are further delineated as (i) "suffering from terminal

illness" or (ii) suffering from "serious physical or medical condition", "serious functional or cognitive impairment", or "experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

25.     Under Application Note 1(B), Age of the Defendant, extraordinary and compelling reasons exist where "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."

26.     Application Note 1(C), Family Circumstances, does not apply to these proceedings.

27.     Application Note 1(D) states: "As determined by the Director of the Bureau of Prisons, there is in the defendant's case an extraordinary and compelling reason other than, or on combination with, the reasons described in subdivisions (A) through (C)."  Now that defendants can file for reduction in sentence, and not just BOP as when this Policy Statement went into effect, courts have found that they are empowered to determine extraordinary and compelling reasons other than those specifically defined in the Policy Statement.  *See, e.g., United States v. Cantu*, 2019 U.S. Dist. LEXIS 100923 at *12 (S.D. Tex. June 17, 2019) ("[W]hen a defendant brings a motion for a sentence reduction under

the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant granting relief."). *See also United States v. Fox*, 2019 U.S. Dist. LEXIS at *7 (D. Maine July 11, 2019) ("I treat the previous BOP discretion to identify other extraordinary and compelling reasons as assigned now to the courts."); *United States v. Rivernider*, 2019 U.S. Dist. LEXIS 137134 at *7 (D. Conn. Aug. 14, 2019).

28.     Application Note 2 provides that "an extraordinary and compelling reason need not have to be unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment."

29.     Application Note 4 "encourages the Director of the Bureau of Prisons to file such a motion [for reduction of sentence] if the defendant meets **any of the circumstances** set forth in Application Note 1".[6] (emphasis added).

30.     The Sentencing Commission's Policy Statement § 1B1.13 has not been amended since the enactment of the First Step Act.  Indeed, the Commission is currently without a quorum of voting members to amend the Policy Statement or take similar action.[7]

---

[6] The Policy Statement was last amended prior to the enactment of the First Step Act, which amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to file a motion for reduction themselves.  However, this encouragement demonstrates the desire of the Sentencing Commission for expanded use of compassionate release procedures. *See United States v. Bellamy*, 2019 U.S. Dist. LEXIS 124219 at * 3 (D. Minn. July 25, 2019) (noting that the Commission passed amendments "that 'strengthened and broadened the criteria for compassionate release.'") (internal citations omitted).  Congress has since expanded the availability of compassionate release even further, and in doing so expressly stated its intent that there be greater use of compassionate release procedures. *See id.*

[7] *See United States v. Beck*, 2019 U.S. Dist. LEXIS 108542 at *15, n.7 (M.D.N.C. June 28, 2019).

However, courts still use § 1B1.13 as a tool for guiding decisions for motions to reduce sentence pursuant to Section 3582(c)(1)(A).

31.     Finally, the Bureau of Prisons issued Program Statement 5050.50 on January 27, 2019.  Program Statement 5050.50 sets forth how BOP reviews requests for it to file a motion for reduction of sentence with the court under Section 3582(c)(1)(A).   While Program Statement 5050.50 sets forth how the BOP reviews requests made for it to file such a motion on behalf of a defendant, it is not one of the factors that this Court is bound to consider under Section 3582(c)(1)(A).   This differentiates BOP Program Statement 5050.50 from the Sentencing Commission's applicable policy statements.  A reduction in sentence under Section 3582(c)(1)(A) must be "consistent with applicable policy statements issued by the Sentencing Commission".

32.     Program Statement 5050.50 sets forth criteria for evaluating requests based on Medical Circumstances in § 571.61(3), which delineates different standards for those with a Terminal Medical Condition [§ 571.61(3)(a)] and Debilitated Medical Condition [§ 571.61(3)(b)].

33.     Program Statement 5050.50 sets forth criteria for evaluating requests based on Non-Medical Circumstances—Elderly Inmates § 571.61(4), which sets forth different standards for "New Law" Elderly Inmates [§ 571.61(4)(a)]; Elderly Inmates with Medical Conditions [§ 571.61(4)(b)]; and Other Elderly Inmates [§ 571.61(4)(c)].

34.     It bears noting that the Other Elderly Inmates criteria under § 571.61(4)(c) are substantially more restrictive than the Sentencing Commission's § 1B1.13 Application Note 1(B), Age of the Defendant.  The BOP Program Statement limits "Other Elderly Inmates" eligible for sentence reduction to "Inmates age 65 or older who served the greater of 10 years or 75% of the term of imprisonment to which the inmate was sentenced." *See e.g., Totaro v. Warden Fort Dix Fed. Corr. Inst.*, 742 Fed. Appx. 596, 597 (3d Cir. 2018) (noting conflict between Sentencing Commission Policy Statement and BOP Program Statement 5050.49, which was superseded by 5050.50 but identical in its treatment of "Other Elderly Inmates").  The *Totaro* opinion from the Third Circuit affirmed a decision of the District Court, *Totaro v. Ortiz*, 2017 U.S. Dist. LEXIS 190209 at *7-9 (D.N.J. Nov. 17, 2017).  The District Court opinion contains further discussion of the conflict and the history of the addition of the "Age of Defendant" criteria to the Sentencing Commission Policy Statement.  The conflict between these criteria and the impact of that conflict in this matter will be discussed further herein.

35.     Program Statement 5050.50 sets forth criteria for evaluating requests based on Non-Medical Circumstances for situations involving death or incapacitation of certainly family members of the inmate in § 571.61(5)&(6).  Those provisions have no application to this matter.

36.     Finally, Program Statement 5050.50 sets forth factors to consider in evaluating requests for compassionate release in § 571.61(7).  The factors "are neither

exclusive nor weighted".  Overall, the BOP states that it should always "consider whether the inmate's release would pose a danger to the safety of any other person or the community".

### IV.    ARGUMENT

#### A.    Mr. Ebbers Has Exhausted Administrative Remedies

37.    Mr. Ebbers' request for compassionate release was received by the Warden of FMC Ft. Worth on July 17, 2019.  *See* Exhibit "4".  More than 30 days have passed since the request was received.

38.    While the Warden recommended approval of the request, BOP denied the request on August 12, 2019.  *See* Exhibit "5".  BOP's denial was made by Ken Hyle, its Assistant Director/General Counsel.  Pursuant to BOP's Program Statement, denial by BOP's General Counsel "constitutes a final administrative decision."  *See* Program Statement 5050.50 at § 571.63(b).  A denial by BOP General Counsel may not be appealed through the Administrative Remedy Procedure.  *See* Program Statement 5050.50 at § 571.63(d).

39.    Based on the foregoing, Ebbers is authorized to proceed in this Court by 18 U.S.C. § 3582(c)(1)(A).

**B.    Extraordinary and Compelling Reasons for Reduction in Sentence**

**1.    Age**

40.    Mr. Ebbers is currently 78 years old.

41.    Mr. Ebbers' age (over 65) combined with his service of over 10 years of his sentence (he has served nearly 13 years) and "serious deterioration in physical or mental health because of the aging process" (discussed in more detail below) constitutes an extraordinary and compelling circumstance under Application Note 1(B) of § 1B1.13 of the Sentencing Commission's Policy Statement.

42.    Significantly, Application Note 1(B) of § 1B1.13 (Elderly Inmates) does not require a further finding that the inmate lacks the ability to provide self-care and adequately function in a custodial setting.  While Ebbers can also satisfy that standard, as set forth below, he need not do so under 18 U.S.C. § 3582(c)(1)(A), since Ebbers otherwise qualifies under the statute and an extraordinary and compelling circumstance under Application Note 1(B) of § 1B1.13 (Elderly Inmates) is "consistent with applicable policy statements issued by the Sentencing Commission."

43.    It is acknowledged that the BOP has not adopted the Sentencing Commission's recommendation of Application Note 1(B) of § 1B1.13 (Elderly Inmates) as it relates to the amount of time served.  While the Sentencing Commission recommends release of such persons after serving the **lesser** of 10 years or 75% of their sentence, the

BOP's guidelines only recommend release to such persons after serving the **greater** of 10 years or 75% of their sentence.[8]

44.     While BOP is not bound by the Sentencing Commission's recommendation, neither is this Court bound by the BOP's criteria.  In *United States v. Beck,* 2019 U.S. Dist. LEXIS 108542 (M.D.N.C. June 28, 2019), the court granted a reduction in sentence despite the fact that BOP denied the request and the Government opposed the relief sought.  In reviewing the matter, the court analyzed the extent to which BOP's determinations were due any deference, and concluded that BOP was entitled to "little, if any, deference".  *Id.* at *33.

45.     The *Beck* court reasoned: "For one, BOP's internal criteria for assessing when compassionate release is appropriate are stricter than U.S.S.G. § 1B1.13 and the application note."  *Id.*  "Moreover, the terms of the First Step Act give courts independent authority to grant motions for compassionate release and says nothing about deference to BOP, thus establishing that Congress wants courts to take a *de novo* look at compassionate release motions."  *Id.* at *34.  In short, when Congress expanded the availability of compassionate release under the First Step Act, it removed the singular responsibility for determining eligibility for compassionate release from BOP and empowered the courts to make their own determinations.

---

[8] For Mr. Ebbers to qualify under BOP's guideline, he would have to serve nearly 19 years in prison, or almost double the term that the Sentencing Commission's Policy Statement requires.  In light of express Congressional intent in the First Step Act to expand the use of compassionate release procedures, BOP's guideline is overly restrictive and should be accorded no deference.

46.     Simply put, if the Court determines that Mr. Ebbers satisfies with all other requirements of 18 U.S.C. § 3582(c)(1)(A), then his status as an "Elderly Inmate" as defined by Application Note 1(B) of § 1B1.13 is a sufficient extraordinary and compelling reason to grant this Motion.  Since Mr. Ebbers is 78, has served more than 10 years in prison, and suffers from "serious deterioration in physical or mental health because of the aging process," he qualifies for compassionate release without examining any other factors.

### 2.     Medical Conditions

47.     Mr. Ebbers has developed macular degeneration, an incurable eye disease, while incarcerated. In order to minimize the impact of macular degeneration, early diagnosis and a proactive medical approach must be taken. Ebbers is now legally blind in both eyes.  His macular degeneration is described as severe.

48.     Ebbers' macular degeneration has caused at least two major incidents in prison in recent years.  Because of his diminished eyesight, Ebbers unintentionally bumped into another prisoner while walking in the facility in September of 2017. The prisoner came to Ebbers' open cell later in the day and physically attacked him for bumping into him. Ebbers suffered fractured orbital bones, blunt head trauma, and other injuries as result of this assault. Ebbers could not identify his attacker due to his severely limited eyesight. Ebbers was placed in solitary confinement because he was unable to identify his attacker.

49.     More recently, Ebbers fell while doing laundry because of his severely limited eyesight. Ebbers suffered an injury to his head, requiring medical attention.  Mr.

Ebbers' eyesight will only continue to worsen.  When coupled with his other medical conditions, discussed below, his ability to function and provide self-care in prison will also continue to diminish.

50.    Because of his worsening vision, Ebbers used for several years a magnifying glass to help him read and carry out activities of daily living (such as making phone calls, reading his watch, completing his requests for medical care, and completing weekly commissary orders).  Approximately 6 months ago, Ebbers' magnifying glass broke.  His family sought to secure him a replacement, but this was denied.[9]  However, because of the continued deterioration of Mr. Ebbers' eyesight due to macular degeneration, there is great doubt that his sight will be significantly aided at this point by a magnifying glass.  His eyesight will only continue to worsen, as macular degeneration is incurable.

51.    Because of his legal blindness resulting from incurable macular degeneration, Mr. Ebbers is unable to read documents requiring his signature, books, newspapers, or his Bible.  He cannot fill out his weekly commissary order; fill out medical request forms; read his name on the list of inmates with scheduled medical visits; read announcements posted in the facility; put in the code on a locker; read a watch or clock or date on a calendar; safely cut his fingernails and toenails; or shave.  He also has severe

_____

[9] Remarkably, one of the justifications the BOP used for denying Ebbers' request for compassionate release was that his ability to function in prison is aided by a magnifying glass that he no longer has.  *See* Exhibit "5" at p. 2.

difficulty seeing the buttons to make a phone call. He no longer sleeps through the night, and when he wakes up he is unable to read a clock or watch and know the time.

52.     At the time Ebbers was sentenced, he had a heart murmur that was later diagnosed as nonischemic cardiomyopathy. A heart defibrillator/pacemaker was surgically installed in or around February 2017 to help with Ebbers' heart condition.  Within several months of the heart defibrillator/pacemaker being installed, Mr. Ebbers was transferred from FCI Oakdale to FMC Ft. Worth, a medical prison facility where he is currently incarcerated.  Mr. Ebbers' heart ailments leaves him vulnerable to sudden heart attack, stroke, or other fatal events.  For instance, during a pacemaker check in November of 2018, it was discovered that Mr. Ebbers' heart went 8 seconds between beats in August of 2018.

53.     Ebbers carries nitroglycerin pills due to his increased risk of heart attack and stroke. Mr. Ebbers's cardiomyopathy has recently worsened.  In late 2018/early 2019, his ejection fraction (EF, which measures the heart's pumping ability) was found to be 25%. Earlier in 2018, his ejection fraction had been found to be 35%.  An ejection fraction of 50-75% is considered normal, 36-49% is considered below normal, and anything below 35% is considered severely low.  According to the Cleveland Clinic, "If you have an EF of less than 35%, you have a greater risk of life-threatening irregular heartbeats that can cause sudden cardiac arrest/death."

54.     In October of 2017, Ebbers was found to be suffering from prediabetes, as a result of an A1c level of 6.2.  Upon information and belief, Ebbers was recently diagnosed

17

with diabetes following a more recent A1c level of 8 or higher.  This is a recent development that will only further complicate Mr. Ebbers' overall health condition.

55.     Mr. Ebbers was found to have a left inguinal hernia in October of 2018. Surgery has been recommended, but not performed.  In January of 2019, Mr. Ebbers was found to have a right inguinal hernia as well.  Surgery has also been recommended, but not performed, on this second hernia.

56.     Mr. Ebbers has lost significant weight over the past year, and particularly in the past few months.  On July 12, 2018, his weight was recorded as 200 pounds.  On January 17, 2019, his weight was 187 pounds.  Upon information and belief, his current weight is approximately 160 pounds.  Mr. Ebbers has also recently developed shortness of breath and a persistent cough, common symptoms for those suffering from serious heart ailments.  He tires easily, even when just having routine conversations.  While Mr. Ebbers used to walk regularly for exercise (which aids with his cardiomyopathy and overall health), he is now unable to do so.  He spends a great deal of time sleeping and non-ambulatory.  Ebbers was also recently diagnosed with anemia.  His family members have observed physical and mental deterioration that has been quite drastic over the past 6 months.  *See* Exhibit "6," Declaration of Joy Ebbers Bourne.

57.     Though the BOP denied Mr. Ebbers' request to file a motion on his behalf, the BOP acknowledges that Mr. Ebbers suffers from several "chronic" medical conditions. *See* Exhibit "5," at p. 2.  These conditions include: "hyperlipidemia, hypertension,

18

cardiomyopathy, heart failure, macular degeneration, low vision in both eyes, and inguinal hernia." *See* Exhibit "5," at p. 1. The BOP agrees that Ebbers is "legally blind". *See* Exhibit "5," at p. 1.

58.     As set forth herein, BOP's denial is not entitled to any deference by this Court.  However, it must be noted that the BOP's justifications for denying Mr. Ebbers' request for compassionate release do not comport with his current medical condition.  Mr. Ebbers' overall physical health has deteriorated dramatically in the past 6 months.  *See* Exhibit "6," Declaration of Joy Ebbers Bourne.  Many of the daily activities that the BOP says Mr. Ebbers can easily perform are, in fact, quite difficult.  BOP even cites to the fact that Mr. Ebbers can see just fine with a magnifying glass, though Mr. Ebbers has not had access to a magnifying glass for months.  He was denied a replacement (though at this stage there is significant doubt that a magnifying glass would provide much assistance to Mr. Ebbers).

59.     Upon information and belief, Mr. Ebbers' request for compassionate release was recommended for approval by the Warden of the medical facility at which Mr. Ebbers is incarcerated.   The denial came from BOP's Assistant Director/General Counsel, following review of the warden's determination.  *See* Exhibit "5".  It is significant that those at the facility who see Mr. Ebbers daily and who are in charge of his care (including medical care) found his condition warranted compassionate release.  It was only upon

19

further review within the higher levels of BOP, and using criteria that are stricter than required under the law, that Mr. Ebbers' request was denied.

60.    Ebbers' medical condition caused Barbara Jones, the now-retired federal judge who sentenced Ebbers to 25 years imprisonment, to write a letter in support of this Motion.  Jones writes:

> These medical conditions cause me to support Mr. Ebbers' request for a reduction in sentence. In doing so, I do not mean to minimize the severity of his crimes. His conduct inflicted substantial harm on many good people. The 25-year sentence that I imposed was intended to underscore the seriousness of that conduct and to serve as a deterrent to others who would commit financial fraud. A reduction in sentence now, however, after he has served almost 14 years of his sentence and developed serious medical issues, would not diminish the message that I sought to convey in 2005. It would show compassion. And, to state the obvious, it would not jeopardize public safety. In short, I believe that given his serious health problems, Mr. Ebbers has been punished enough.

*See* Exhibit "1," Letter to Judge McMahon dated 09/03/2019.

61.    In an earlier letter, written to the President in 2017 in support of commutation of Mr. Ebbers' sentence, Judge Jones wrote: "Releasing Mr. Ebbers at age 76 [now 78] and in poor health after 12 years [now nearly 13] in prison would not diminish respect for the law."  *See* Exhibit "1," Letter to President Trump dated 09/15/2017.

62.    While each motion for reduction in sentence under Section 3582(c)(1)(A) turns on highly individualized facts, granting Mr. Ebbers' the relief requested in this Motion would be consistent with decisions from other District Courts around the nation. *See, e.g., United States v. Beck*, 2019 U.S. Dist. LEXIS 108542 (M.D.N.C. June 28, 2019)

20

(47 year old convicted of distribution of methamphetamine and use of firearm granted reduction after serving 76 months of 165 month sentence, due to cancer that was not timely treated); *United States v. Bellamy*, 2019 U.S. Dist. LEXIS 124219 (D. Minn. July 25, 2019) (71 year old inmate confined to wheelchair and suffering from heart ailments, diabetes, and kidney disease granted reduction of sentence from conviction for conspiracy to traffic heroin); *United States v. Johns*, 2019 U.S. Dist. LEXIS107850 (D. Ariz. June 27, 2019) (81 year old suffering from severe heart disease, including 35% ejection fraction, along with other conditions granted release after serving 23 years of life sentence for multiple serious drug offenses); *United States v. McGraw*, 2019 U.S. Dist. LEXIS 78370 (S.D. Ind. May 9, 2019) (72 year old inmate with limited mobility, diabetes, kidney disease, Hepatitis C, and other issues released after serving 17 years of life sentence for conspiracy to possess with intent to distribute methamphetamine); *United States v. Peterson*, 2019 U.S. Dist. LEXIS 93480 (E.D.N.C. June 4, 2019) (80 year old inmate with dementia, leg amputation, glaucoma, coronary artery disease, and other conditions granted reduction of 132 month sentence following service of 91 months for conviction of possession with cocaine base with intent to distribute and discharge of firearm in furtherance of drug trafficking, a serious crime of violence); *United States v. York*, 2019 U.S. Dist. LEXIS 119768 (E.D. Tenn. July 18, 2019) (60 year old wheelchair bound inmate with congestive heart failure, kidney failure, diabetes, and other conditions released following 73 months of 106 month sentence for multiple drug offenses and Social Security fraud).

### 3.   Judge Jones' Support of Mr. Ebbers' Release

63.   Another extraordinary and compelling reason to reduce Ebbers' sentence is the nearly unprecedented support of his release by the former District Court Judge that issued his 25-year prison sentence.

64.   Hon. Barbara Jones, now retired from the federal bench, has written a letter to the Court in support of this Motion.  Judge Jones previously wrote to the President to voice her support for Ebbers' release.   In light of Mr. Ebbers' age, perilous medical condition, and significant prison time already served, Judge Jones believes Mr. Ebbers has been punished enough and should be released from prison.  *See* Exhibit "1," Letter to Judge McMahon dated 09/03/2019 and Letter to President Trump dated 09/15/2017.

65.   In her 2019 letter, Judge Jones notes that Mr. Ebbers' sentence, while within the Sentencing Guidelines, was "unarguably a very lengthy sentence, particularly for a man in his 60's." *See* Exhibit "1," Letter to Judge McMahon dated 09/03/2019.  "A reduction in sentence now, however, after he has served almost 14 years of his sentence and developed serious medical issues, would not diminish the message that I sought to convey in 2005. It would show compassion. And, to state the obvious, it would not jeopardize public safety. In short, I believe that given his serious health problems, Mr. Ebbers has been punished enough." *See* Exhibit "1," Letter to Judge McMahon dated 09/03/2019.

66.   As stated previously, courts have found that they are empowered to determine extraordinary and compelling reasons other than those specifically defined in

22

the Sentencing Commission's Policy Statement.  *See, e.g., United States v. Cantu*, 2019

U.S. Dist. LEXIS 100923 at *12 (S.D. Tex. June 17, 2019) ("[W]hen a defendant brings a

motion for a sentence reduction under the amended provision, the Court can determine

whether any extraordinary and compelling reasons other than those delineated in U.S.S.G.

§ 1B1.13 cmt. n.1(A)-(C) warrant granting relief.").  *See also United States v. Fox*, 2019

U.S. Dist. LEXIS at *7 (D. Maine July 11, 2019) ("I treat the previous BOP discretion to

identify other extraordinary and compelling reasons as assigned now to the courts.");

*United States v. Rivernider*, 2019 U.S. Dist. LEXIS 137134 at *7 (D. Conn. Aug. 14, 2019).

67.     The fact that the former federal judge that sentenced Mr. Ebbers to 25 years

imprisonment now supports his release is an extraordinary and compelling reason to grant

the reduction in sentence.

68.     In *Cantu*, the Government did not oppose the motion for release of the

defendant to home confinement.  2019 U.S. Dist. LEXIS 100923 at *1.  The court found

the Government's lack of opposition to be an extraordinary and compelling reason for

granting the motion.  *Id.* At *13-14.  In doing so, the court looked at the meaning of

"extraordinary" from Black's Law Dictionary: "beyond what is usual, customary, regular,

or common."  *Id.* at *13 (citing Black's Law Dictionary (10th ed. 2014)).  The court further

extrapolated from the Black's Law Dictionary of "compelling need" that "a compelling

reason is one 'so great that irreparable harm or injustice would result if [the relief] is not

[granted]'". *Cantu*, 2019 U.S. Dist. LEXIS 100923 at *13 (citing Black's Law Dictionary (10th ed. 2014)).

69.     The *Cantu* court continued: "For the Government to advocate that the Court issue an order 'that would cause BOP to release the Defendant' is beyond what is usual, customary, regular, or common.  And given the Government's position, irreparable harm and injustice would result if the Court failed to craft such an order." *Id.* at *13 (internal citations omitted).  Finding the "Government non-opposition is both the touchstone of the determination and rare," the court noted that its decision reducing the sentence would be "narrow and unlikely to have far-reaching implications." *Id.* at *13-14.

70.     Similarly, Mr. Ebbers is in the rare position of having the former judge who sentenced him to a lengthy term of imprisonment now supporting his release.  This is "beyond what is usual, customary, regular, or common" in our criminal justice system.  If Judge Jones was still on the bench, then this Motion would have returned to her for consideration.[10]   In light of Judge Jones' view that Mr. Ebbers should be granted compassionate release in light of his age, failing health, and service of already significant prison time (the very questions before this Court), Mr. Ebbers would suffer irreparable harm and an injustice would result if he was not granted the relief sought in this Motion.

---

[10] *See* Local Criminal Rule 34.1 & Rule 9, Local Rules for the Division of Business Among District Judges, Southern District.

71.     For these reasons, Judge Jones' support of Mr. Ebbers' request for a reduction in sentence and compassionate release is an extraordinary and compelling reason (on its own or in conjunction with the others presented herein) that permits this Court to grant this Motion.

### C.     Compliance With Sentencing Commission Policy Statements

72.     Mr. Ebbers has already detailed above how his extraordinary and compelling reasons for reduction in sentence are in line with the Sentencing Commission's § 1B1.13 Application Note 1(A), (B), and (D).     Those arguments are incorporated herein by reference.

73.     Application Note 4 of § 1B1.13 "encourages the Director of the Bureau of Prisons to file such a motion [for reduction of sentence] if the defendant meets **any of the circumstances** set forth in Application Note 1". (emphasis added).     This reflects the Sentencing Commission's desire to broaden compassionate release.     As demonstrated herein, Ebbers meets 3 of the 4 extraordinary and compelling circumstances.

74.     Ebbers meets all other criteria in § 1B1.13, including that he does not pose a danger to another person or the community.

75.     Potential dangerousness is to be evaluated under the standards of 18 U.S.C. § 3142(g), which are set forth below, along with the showing of how Mr. Ebbers satisfies the standard:

**Nature and circumstance of offense charged:**   Mr. Ebbers was convicted of securities fraud and submitting false security filings.  These were non-violent offenses and Mr. Ebbers was a first-time felony offender.

**Weight of the evidence:** this factor is inapplicable to this matter.

**Character:**   as set forth in the Pre-Sentence Report, Mr. Ebbers' character, outside of the convictions in this cause, was remarkable.  He was noted as a kind and generous man who took care of his family and was active in his community.  *See also*, Exhibit "3," Materials in Support of Request for Compassionate Release, Letters and Statements of Support.

**Physical and mental condition:** As detailed above, Mr. Ebbers' physical condition is such that he would pose no danger to anyone.

**Family ties:**   If released, Mr. Ebbers will live with continuous family support in Mississippi, where the great bulk of his family is located.  Mr. Ebbers has had remarkable family support throughout his incarceration.  *See* Exhibit "6," Declaration of Joy Ebbers Bourne.

**Employment:** Mr. Ebbers will be unable to work due to his health and physical conditions.

**Financial resources:**   Mr. Ebbers surrendered all of his assets prior to reporting for prison.  His family has sufficient means to provide support and care for him upon release, and he will apply for Social Security and Medicare benefits.

**Length of residence in community:** If released, Mr. Ebbers will reside in Mississippi, where he lived the bulk of his adult life prior to his incarceration.

**Community ties:** Mr. Ebbers has significant community ties in Mississippi.

**Past conduct:** Outside of the convictions in this cause, Mr. Ebbers lived an exemplary life marked by generosity, charitable giving, and closeness to his family. His only other conviction was for misdemeanor Reckless Driving and Violation of Implied Consent Law in Nashville, Tennessee. He was sentenced to pay a $1,000 fine plus court costs. The fine and court costs were paid.

**History of drug or alcohol abuse:** None.

**Criminal history:** Outside of the convictions in this cause, Mr. Ebbers has no other felony convictions. His only other conviction was for misdemeanor Reckless Driving and Violation of Implied Consent Law in Nashville, Tennessee. He was sentenced to pay a $1,000 fine plus court costs. The fine and court costs were paid.

**Appearance at court proceedings:** Mr. Ebbers has a history of attending all court proceedings.

**At time of offense, whether person was on probation, parole, or other release pending trial, sentencing, appeal, etc.:** No.

**Nature and seriousness of danger to any person or the community that would be posed by Ebbers' release:** Mr. Ebbers was a first-time felony offender, for non-violent offenses.   He has no history of violence.   The Pre-Sentence Report in this matter specifically found he was not a danger to the community.

76.     As set forth herein, a reduction of Mr. Ebbers' sentence and his release from prison is consistent with applicable policy statements issued by the Sentencing Commission.

### D.     Application of 18 U.S.C. § 3553(a) Factors to Mr. Ebbers' Request

77.     The Court must also examine any applicable factors under 18 U.S.C. § 3553(a).   Those factors are set forth below along with how they weigh in favor of a reduction in sentence and release:

**Nature and circumstances of offense:**   Securities fraud/false filings, which are non-violent offenses.

**History and characteristics of defendant:**     These were Mr. Ebbers' first and only felony convictions.   He has no history of violence.   Rather, he has a history of being a loving and supportive father and active in his community.   He also has a well-documented history of being generous in donations (many of which were anonymous) to charities, ministries, college students in need of financial assistance, etc.

28

**Need for sentence to reflect seriousness of offense, promote respect for law, and provide just punishment:** Mr. Ebbers has served nearly 13 years in prison, a substantial punishment. Indeed, retired Judge Barbara Jones has noted that releasing Ebbers after he has served his significant prison term would not diminish respect for the law. *See* Exhibit "1".

**Need for sentence to afford adequate deterrence to criminal conduct:** Mr. Ebbers has served nearly 13 years in prison, a substantial punishment. He also surrendered all of his assets. Deterrence has been achieved even if the sentenced is reduced. Retired federal judge, Barbara Jones, states that deterrence was a major factor in determining Mr. Ebbers sentence. *See* Exhibit "1," Letter from Judge Jones to Judge McMahon dated 09/03/2019. Even so, Judge Jones finds that the goal of deterrence would not be diminished by reducing Mr. Ebbers' sentence in light of his poor health and having served nearly 13 years in prison. *See* Exhibit "1," Letter from Judge Jones to Judge McMahon dated 09/03/2019.

**Need for sentence to protect the public from further crimes of defendant:** Mr. Ebbers is a first-time, non-violent felony offender. The Presentence Report specifically found he was not a danger to the community. In light of his physical health, he will not be a danger to anyone. Judge Jones wrote that releasing Mr. Ebbers "would not jeopardize public safety". *See* Exhibit "1," Letter from Judge Jones to Judge McMahon dated 09/03/2019.

**Need for sentence to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in most effective manner:**  Mr. Ebbers would most benefit now from medical treatment and family support outside of a correctional environment.  He is not in need of educational or vocational training, as he will not be returning to the workforce in light of his health.

**Kinds of sentences available:** not applicable, other than to note that the court can impose terms of supervision if Ebbers is released.

**Kinds of sentence and sentencing range under guidelines:** not applicable, other than to note that the court can impose terms of supervision if Ebbers is released.

**Any pertinent policy statement of Sentencing Commission:** *see* Section IV.C, *supra*.

**Need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct:** Mr. Ebbers' sentence was one of the longest for similar conduct by a similarly situated defendant.  Serving 13 years of imprisonment is on par with others convicted of similar offenses (for instance, Jeff Skilling of Enron received a 14-year sentence; Sam Waskal, 7 years; and John Rigas of Adelphia, 15 years).

**Need to provide restitution to victims of the offense:**  Prior to reporting to prison, Mr. Ebbers forfeited all of his assets, which were placed in a fund for compensation of the

company and investors who lost money.  Ebbers could not have done anything further to contribute to restitution.

78.    The 18 U.S.C. § 3553(a) factors weigh heavily in favor of granting this Motion.

## VII.    CONCLUSION

79.    In summary, Mr. Ebbers meets all of the criteria for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  He has exhausted administrative rights prior to this filing, the applicable factors set forth in section 3353(a) weigh in his favor, he demonstrates extraordinary and compelling reasons that warrant the reduction, and a reduction in sentence is consistent with applicable policy statements issued by the Sentencing Commission.

80.    Judge Jones, who imposed the substantial sentence in this case, believes that Mr. Ebbers "has been punished enough" and should be shown compassion and released. This Court is empowered to do just that, and Mr. Ebbers prays that this Court will grant this Motion, order a reduction of his prison sentence to time-served, order his immediate release, and impose the least-restrictive post-release conditions available under the circumstances.[11]

---

[11] "[S]pecial conditions of supervised release must cause no greater deprivation of liberty than reasonably necessary to achieve the goals supervised release, including the need to provide effective medical treatment."  *United States v. Sotelo*, 2019 U.S. Dist. LEXIS 135051 at *34 (E.D. Pa. Aug. 8, 2019) (quoting *United States v. Dimasi*, 220 F. Supp. 3d 173, 198 (D. Mass. 2016)).

WHEREFORE, PREMISES CONSIDERED, Bernard J. Ebbers respectfully requests that this Court GRANT this Motion for Reduction in Sentence and order his immediate release from imprisonment under the least restrictive conditions available under law. Mr. Ebbers prays for any further or additional relief to which he may be entitled in the premises.

RESPECTFULLY SUBMITTED this the 5th day of September, 2019.

**BERNARD J. EBBERS**

*/s/ Graham P. Carner*

BY:   GRAHAM P. CARNER

**OF COUNSEL:**

GRAHAM P. CARNER (MSBN 101523)
Graham P. Carner, PLLC
775 N. Congress Street
Jackson, Miss. 39202
T: 601.949.9456
F: 601.354.7854
E: graham.carner@gmail.com
***Admitted Pro Hac Vice***

**CERTIFICATE OF SERVICE**

I, Graham P. Carner, do hereby certify that I served a true and correct copy of the above and foregoing document by electronically filing same in accordance with this Court's electronic filing procedures, resulting in notice to ALL COUNSEL OF RECORD.

So certified this the 5th day of September, 2019.

*/s/ Graham P. Carner*

GRAHAM P. CARNER

32